UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| The Redeemed Christian Church of God Jesus House for All Nations, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:13CV2405 SNLJ |
| Citizenship and Immigration Services, | ) ) | |
| Respondent. | ) | |

### **MEMORANDUM AND ORDER**

This matter is before the Court on the parties' cross motions for summary judgment. The motions are ripe for disposition. For the following reasons, the Court will grant defendant's motion and deny plaintiff's motion.

**I.   Background**

Plaintiff, a member church of The Redeemed Christian Church of God Jesus House for All Nations, filed an I-360 Petition for Amerasian, Widow(er), or Special Worker for a special immigrant religious worker visa on behalf of Olufemi Omotayo to serve as a minister for the church in St. Louis, Missouri. The petition was initially approved and later revoked. Plaintiff seeks review under the Administrative Procedure Act (APA) of the revocation of the I-360 petition. The director determined, and the Administrative Appeals Office (AAO) agreed, that the plaintiff had failed to pass a compliance review and had not submitted credible, consistent evidence regarding Omotayo's compensation. Plaintiff filed a declaratory judgment in this Court alleging

the AAO's finding that plaintiff failed the compliance review and revocation of the petition was erroneous. Further, plaintiff alleges that it presented sufficient evidence in rebuttal to the allegations for revocation and for approval of the petition. Defendant, the United States Citizenship and Immigration Services (USCIS), filed a motion for summary judgment. Plaintiff filed its response to defendant's motion and filed its own motion for summary judgment, to which defendant filed a response. Each argues the record before the AAO supports its position.

## II.     Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The scope of judicial review under the APA is limited. *Voyageurs Nat. Park Ass'n v. Norton*, 381 F.3d 759, 763 (8th Cir. 2004). "[J]udicial review under the APA is limited to the administrative record that was before the agency when it made its decision." *Id.* at 766. The court will uphold the agency decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Voyageurs*, 381 F.3d at 763. The standard of review requires that the court give "agency decisions a high degree of deference." *Voyageurs*, 381 F.3d at 763. The reviewing court considers "whether the decision was based on consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416 (1971). The reviewing court "is not empowered to substitute its

judgment for that of the agency." *Id.* "If an agency's determination is supportable on any rational basis, the court must uphold it." *Voyageurs*, 381 F.3d at 763.

## III. Facts

*The I-360 Petition: April 15, 2002*

Olufemi Omotayo is a native and citizen of Nigeria. He entered the United States on June 12, 2001, with a B-2 nonimmigrant status.[1] On June 5, 2002, plaintiff filed an I-129, Petition for Nonimmigrant Worker on behalf of Omotayo. USCIS granted that petition and, on December 5, 2002, Omotayo's status changed to R-1 nonimmigrant religious worker.[2] That status remained valid from December 5, 2002 to December 5, 2005.

On April 15, 2002, plaintiff filed an I-360 Petition for Amerasian, Widow(er), or Special Worker on Omotayo's behalf seeking classification as a special immigrant religious worker. Olufemi Akano, the church's Administrator/Secretary, submitted a letter to USCIS dated March 25, 2002 describing Omotayo's intended employment. In that letter, he indicated that Omotayo would fill the position of Pastor-in-Charge at the St. Louis church and that Omotayo would be paid $28,000 annually exclusive of benefits, which included medical coverage, full accommodations, and use of a church vehicle.

---

[1] A B-2 is a visa for nonimmigrant visitors for pleasure. *See* 8 C.F.R. § 214.1(a)(1)(i). Visitors with nonimmigrant B-2 visas may not engage in employment while in the United States. *See* 8 C.F.R. 214.1(e).

[2] A nonimmigrant religious worker R-1 visa permits temporary employment at least part time by a non-profit religious organization in the United States to work as a minister or in a religious vocation or occupation. *See* 8 U.S.C. § 1101(a)(15)(R); 8 C.F.R. § 214.2(r).

3

On January 9, 2003, USCIS sent plaintiff a request for evidence to establish eligibility for the I-360 immigrant visa including evidence of plaintiff's ability to pay the intended salary. The request noted that Omotayo had entered the United States on a B-2 visitor visa and was not eligible to work. USCIS requested evidence to show that Omotayo had been performing ministerial duties continuously and full-time and was compensated from April 15, 2000 through April 15, 2002. Plaintiff responded on February 6, 2003. On March 12, 2003, USCIS approved the I-360 petition.

*Notice of Intent To Revoke: August 29, 2003*

On August 29, 2003, USCIS issued a notice of intent to revoke to plaintiff. USCIS indicated that several petitions filed by the Redeemed Christian Church of God had been denied because the beneficiaries were found not to be religious workers. Because Omotayo belonged to the same church, USCIS had concerns that he was not eligible for special immigrant religious worker status. USCIS gave plaintiff fifteen days to offer rebuttal evidence. USCIS revoked the I-360 on December 12, 2003 because plaintiff did not respond to the agency's request for evidence.

*Reinstatement of the I-360: April 27, 2004*

Plaintiff filed a notice of appeal on January 9, 2004, providing proof that it had submitted the requested evidence to the revocation notice in a timely manner. USCIS reinstated the I-360 on April 27, 2004. USCIS found that a complete review of the record, as well as plaintiff's supporting documentation, overcame the revocation grounds.

*Notice of Intent to Revoke: July 20, 2010*

On July 20, 2010, USCIS issued a notice of intent to revoke to plaintiff. USCIS had information from the fraud office in St. Louis that a USCIS fraud officer conducted an on-site inspection visit on Monday, July 13, 2009 of plaintiff's church and found it locked and unoccupied. The officer contacted Omotayo by telephone. Omotayo stated he was on a temporary assignment to start a new church in Dallas, Texas, where he rented an apartment and received a salary of $596 per week. Omotayo informed the officer that the St. Louis church is closed on Mondays but would be open on any other day. On Thursday, July 16, 2009, the officer returned to the church and again found it locked and unoccupied. During the July 16 inspection, the officer spoke with an employee from American Family Insurance, the business next door to the church. The American Family Insurance employee told the officer that (in the officer's words) "no one is at the church location on a daily basis and that every great once in a while they see someone there." Because of the findings from the site inspections, USCIS found that plaintiff had failed the religious worker compliance review.

USCIS gave plaintiff thirty days to respond to the notice of intent to revoke and instructed plaintiff to submit various types of evidence to establish the extent of its regular operations. Among other things, USCIS instructed plaintiff to submit documentation from the Internal Revenue Service (IRS) and Social Security Administration (SSA) showing Omotayo's income from 2004 through 2009, as well as copies of recent pay statements.

Plaintiff filed its response on or about August 17, 2010, and provided copies of tax records, W-2 forms, lease agreements, and church records. Plaintiff also submitted a letter in which it responded to USCIS's claims about the compliance review. In that letter, Akano wrote that the pastor was out to lunch when the officer found the church closed; that the building had a front entrance, which was kept locked except during services; that the building had a back office entrance; and that the church did "not understand their [neighbor's] reasons for making [their] observations." Further, Akano stated that Omotayo worked "as a full time Pastor . . . and he receives a salary of $31,939.80 from [plaintiff] and will continue to do so for the foreseeable future." Akano also signed an accompanying employer attestation, indicating that Omotayo "will receive a total salary of $30,869.8[0]." Neither the letter nor the attestation indicated that Omotayo receives, or will receive, any benefits apart from the salary.

The IRS Form W-2 Wage and Tax Statements (or transcripts thereof) submitted show that the plaintiff paid Omotayo the following compensation:

| Year | Wages, salary | Clergy housing |
| --- | --- | --- |
| 2005 | $5,400.00 | ------ |
| 2006 | $5,400.00 | ------ |
| 2007 | $5,400.00 | $27,600.00 |
| 2008 | $6,687.00 | $29,243.00 |
| 2009 | $5,102.80 | $26,837.20 |

Weekly pay statements from mid-2010 show that plaintiff paid Omotayo $593.65 per week, with $93.35 designated as "salary" and $500.30 as "clergy housing." The total is very close to the $596 per week Omotayo stated he was paid during the compliance review.

6

*I-360 Revocation: September 7, 2010*

USCIS revoked plaintiff's I-360 immigrant visa on September 7, 2010, stating that the evidence does not show "that the [plaintiff] has fully supported the beneficiary as agreed." Further, the director concluded:

> The evidence on record raises significant questions and discrepancies regarding the full-time employment of the beneficiary. As presently constituted, it contains significant contradictory information regarding the beneficiary's compensation and does not demonstrate credibility that the remaining evidence provided by the [plaintiff] is factual or accurate.

USCIS found that plaintiff was not in compliance with the I-360 requirements and that Omotayo was ineligible to be classified as a special immigrant religious worker.

*AAO Denial: May 16, 2012*

Plaintiff appealed the revocation to the AAO. The AAO dismissed the appeal on May 16, 2012 because the plaintiff had not overcome the failed compliance review. The AAO found that the compliance review called various fundamental aspects of the petition into question and the director had justifiably revoked the approval of the petition. First, the AAO found that plaintiff had serious, unresolved credibility issues regarding the compliance review. Plaintiff's evidence, the AAO underscored, failed to rebut the fraud officer and witness's claims that the church facility was rarely occupied. Second, the AAO found discrepancies in the wage and tax information that plaintiff provided. These discrepancies, the AAO concluded, indicated that plaintiff was not paying Omotayo the intended salary stated in support of the I-360 petition; instead, it suggested that Omotayo was only working part-time. The AAO stated that "the Missouri church's weekday vacancy and the dramatic reduction in the beneficiary's salary are consistent with a

7

conclusion that the [plaintiff's] ministers work part-time rather than full-time as claimed." Further, the AAO noted that the record indicated that Omotayo worked for plaintiff in 2002 when he was on a B-2 nonimmigrant visitor visa, which would have been a violation of his visa status and would make him ineligible for the I-360 immigrant visa. Finally, the AAO noted that the burden of proof in the proceedings rests solely with the plaintiff and it had not met its burden.

*Motion to Reopen: June 13, 2012*

Plaintiff filed a motion to reopen on June 13, 2012. As a part of that motion, plaintiff submitted, *inter alia*, a letter from American Family Insurance Group, a letter from its landlord, copies of Omotayo's W-2 forms from 2003 to 2011, copies of Omotayo's tax returns from 2005 to 2011, and copies of Omotayo's employment authorization cards.

*AAO Denial: October 29, 2013*

The AAO granted plaintiff's motion to reopen and, on October 29, 2013, reaffirmed the prior revocation. The AAO based its revocation on two issues – the failed compliance review and the discrepancies regarding Omotayo's compensation. The AAO first found that the plaintiff had failed to overcome the credibility issues arising from the on-site inspections. The AAO reiterated the prior factual findings: that an officer conducted an on-site inspection of Plaintiff's church on July 13, 2009 and found it locked; that Omotayo spoke with the officer over the phone and indicated that the church was closed on Mondays but was open any other day; that the officer visited on July 16 and again found the building locked and unoccupied; that the officer spoke with

8

employee of neighboring business, American Family Insurance, who indicated that the church was unoccupied on a daily basis and that someone was there "every great once in a while."

The AAO then discredited plaintiff's rebuttal evidence about the compliance review. Plaintiff, it noted, had submitted a letter from American Family Insurance but the letter was problematic for a number of reasons. First, the letterhead was not from the local office in St. Louis. Second, while the letter was signed, it bore no title. Third, the letter did not substantiate plaintiff's claim that every employee at American Family denied making the statement to the USCIS officer regarding the lack of presence at the church on a daily basis. Fourth, the letter did not mention the site visit. Fifth, the letter was undated and did not refer to the period in which the site visit occurred.

Plaintiff also submitted a notarized letter from its landlord, the Maune Company, which indicated that it had leased the building in question since 2007. The AAO found this letter problematic for several reasons. First, the letter indicated that the Maune Company did not own the church; instead, the letter noted that it acted as the true owner's agent. Second, the letter did not describe how the building was being used in 2009, when the on-site inspection occurred. Plaintiff's lease over the building, the AAO noted, was not at issue; instead, the activity on that property was in question. The AAO found that the letter failed to substantiate plaintiff's claim that the church was open for regular weekday hours. Further, it did not explain why the church was locked and vacant during the two on-site visits.

9

The AAO then noted multiple discrepancies regarding Omotayo's compensation. First, plaintiff did not submit the requested evidence from Social Security. USCIS had requested Social Security documentation showing Omotayo's income from 2004 to 2009. Plaintiff only submitted evidence from 2006 and that printout only reported earnings from that year. The failure to submit requested evidence, the AAO noted, is a ground for denying a requested benefit.

The additional compensation information submitted on the motion to reopen showed plaintiff paid the following to Omotayo:

| Year | Wages, salary | Clergy housing |
| --- | --- | --- |
| 2003 | $14,721.65 | ----- |
| 2004 | $15,138.33 | $17,195.00 |
| 2005 | $5,400.00 | $27,600.00 |
| 2006 | $5,400.00 | $27,600.00 |
| 2007 | $5,400.00 | $27,600.00 |
| 2008 | $6,687.00 | $29,243.00 |
| 2009 | $5,102.80 | $26,837.20 |
| 2010 | $4,854.00 | $26,015.60 |
| 2011 | $9,667.50 | $25,015.00 |

The AAO noted that in support of its petition plaintiff had stated Omotayo would be paid $28,000 annually, as well as – but not including – housing and other expenses. The AAO found that copies of the supporting documents did not substantiate this claim. The AAO noted that plaintiff provided contradictory evidence about Omotayo's salary and the W-2 forms and tax records indicated that plaintiff paid Omotayo less than then claimed salary of $28,000 annually, which was to be exclusive of benefits. The AAO found that the record did not establish that plaintiff ever abided by the original terms of compensation as stated in support of its I-360 petition.

Further, the AAO noted other credibility issues that impacted the I-360 petition. The AAO found that the documentary evidence did not rebut a prior finding that Omotayo had worked in the United States without authorization. Specifically, the AAO noted that Omotayo had held a B-2 nonimmigrant visitor visa prior to December 5, 2002 and that his submitted evidence neither overcame nor addressed information indicating that he had unlawfully worked for plaintiff as a B-2 nonimmigrant.

Additionally, the AAO noted a credibility issue regarding Omotayo's residence. Omotayo told the USCIS officer that he lived at 201 N. Parkway Preserve in O'Fallon, Missouri, while his tax returns indicated that he lived at 1012 Golden Orchard Drive in O'Fallon, Missouri. Although plaintiff's counsel explained that Omotayo had failed to change his address with his tax preparer, the AAO noted that the record did not corroborate this claim. Instead, the W-2 forms, which plaintiff prepared, reflected the Golden Orchard address.

Because plaintiff's evidence failed to overcome the AAO's prior decision, the AAO reaffirmed its prior findings and held that plaintiff had failed to meet its burden for eligibility for the I-360 petition.

**IV.   Discussion**

"An I–360 immigrant visa is a 'special immigrant religious worker' visa available to ministers and religious workers who operate in a professional or nonprofessional capacity in a religious vocation or occupation as defined in 8 U.S.C. § 1101(a)(27)(c)." *Islamic and Educ. Cent. Ezan of Greater Des Moines v. Napolitano,* 826 F.Supp.2d 1122, 1125 (S.D. Iowa 2011) (citing 8 C.F.R. § 204.5(m)(2)). "The special immigrant worker

visa process begins with a religious organization (the petitioner) filing an I–360 Petition on behalf of the intended religious worker (the beneficiary)." *Id.* By statute, a minister may qualify for a special immigrant religious worker visa only if he (1) has been a member of a bona fide religious denomination for at least two years; (2) "seeks to enter the United States . . . solely for the purpose of carrying on the vocation of minister of that religious denomination," and (3) "has been carrying on such vocation . . . continuously for at least the [immediately preceding] 2-year period." 8 U.S.C. § 1101(a)(27)(C); *see also* 8 U.S.C. § 1153(b)(4).

Further, the petitioner/religious employer must certify that "the alien will not be engaged in secular employment, and any salaried or non-salaried compensation for the work will be paid to the alien by the attesting employer" and that "the prospective employer has the ability and intention to compensate the alien at a level at which the alien and accompanying family members will not become public charges." 8 C.F.R. § 204.5(m)(7). The "petitioning organization" – the religious employer – must file evidence showing that the organization is or is affiliated with a religious denomination and that the employee is religiously qualified, and must file evidence of the religious employee's compensation and prior employment. *Khalid v. DHS, USA*, 1 F.Supp.3d 560, 566 (S.D. Tex. 2014) (citing 8 C.F.R. § 204.5(m)(8)-(12)). When plaintiff filed the I-360 petition, 8 C.F.R. § 204.5 (m)(4) set forth the following requirements:

> *Job offer.* The letter from the authorized official of the religious organization in the United States must also state how the alien will be solely carrying on the vocation of a minister (including any terms of payment for services or other remuneration), or how the alien will be paid or remunerated if the alien will work in a professional or religious capacity or in other religious work. The

12

documentation should clearly indicate that the alien will not be solely dependent on supplemental employment or solicitation of funds for support. In doubtful cases, additional evidence such as bank letters, recent audits, church membership figures, and/or the number of individuals currently receiving compensation may be requested.

Additionally, the compliance review process, which exists to verify petitioning claims, includes on-site inspections. Specifically, section 204.5(m)(12) provides that:

> *Inspections, evaluations, verifications, and compliance reviews.* The supporting evidence submitted may be verified by USCIS through any means determined appropriate by USCIS, up to and including an on-site inspection of the petitioning organization. The inspection may include a tour of the organization's facilities, an interview with the organization's officials, a review of selected organization records relating to compliance with immigration laws and regulations, and an interview with any other individuals or review of any other records that the USCIS considers pertinent to the integrity of the organization. An inspection may include the organization headquarters, satellite locations, or the work locations planned for the applicable employee. If USCIS decides to conduct a pre-approval inspection, satisfactory completion of such inspection will be a condition for approval of any petition.

8 C.F.R. § 204.5(m)(12).

An approved immigrant petition can be revoked. *See* 8 C.F.R. § 204.5(n)(3) and § 205.2. The plaintiff has the burden of proof throughout the proceedings, including the revocation proceedings, to establish eligibility for the visa petition. *See* 8 U.S.C. § 1361; *Love Korean Church v. Chertoff*, 549 F.3d 749, 754 (9th Cir. 2008). This Court defers to "the BIA's reasonable interpretation of § 1361, which makes it . . . incumbent upon the petitioner to resolve the inconsistencies by independent objective evidence. Attempts to explain or reconcile the conflicting accounts, absent competent objective evidence pointing to where the truth, in fact, lies, will not suffice." *Love Korean Church*, 549 F.3d at 754 (citing *Matter of Ho*, 19 I & N. Dec. 582, 591-92 (BIA 1988)). "Under

appropriate circumstances, '[d]oubt cast on any aspect of the petitioner's proof *may . . . lead to a reevaluation of the reliability and sufficiency of the remaining evidence offered in support of the visa petition."* Id.*

Here, the issues that led to the revocation of the approval of the I-360 petition concern the failed compliance review process and the discrepancies regarding Omotayo's compensation. Additionally, there were credibility issues that were considered when reviewing the plaintiff's denials of the facts in the compliance review and the plaintiff's attempts to reconcile the discrepancies regarding Omotayo's compensation.

*Compliance Review*

The first ground for revocation concerned the failed compliance review and credibility issues arising from site inspections. The petitioning church was locked and empty during two site visits, including on a Thursday after Omotayo specially assured the USCIS officer that the church was open every day except Monday. An employee at a business next door told the officer that no one is at the church on a daily basis and that visitors to the church were rare.

Plaintiff offered two letters as rebuttal evidence regarding the site inspection issues. First, it offered an undated letter from the Wisconsin corporate headquarters of the business next door, American Family Insurance, stating the church holds services on Sundays, Wednesdays and every first Friday of the month and maintains regular office hours during the week. Plaintiff argues that the AAO improperly rejected the letter from American Family. Plaintiff suggests that if defendant questioned the veracity of the letter it should have contacted the signer of the letter. However, in addition to any veracity

14

issue, the letter does not address the statement by an American Family employee regarding the lack of a presence at the church on a regular basis. Further, the letter is undated and there is no indication that the letter refers to the period when the site visit took place. The petitioning church fails to recognize that it bears the burden of proof as to the special immigrant religious worker status throughout the proceedings. *See* 8 U.S.C. § 1361. The letter was insufficient to rebut the findings from the site inspections.

Additionally, plaintiff submitted a letter from its landlord dated May 24, 2012 confirming that it leased the building where the church is located. The letter further stated that the church conducts mid-week bible study services on Wednesdays, Worship services on Sundays, and maintains regular office hours on weekdays. As with the American Family letter, the landlord's letter does not specify the extent of the activity at the church in 2009 when the site visit took place. Likewise, the letter was insufficient to rebut the findings from the site inspections.

Further, plaintiff argues that defendant should have scheduled an appointment with the petitioning church for the compliance review. Plaintiff suggests it was penalized by not keeping an appointment of which it had no knowledge. However, if the petitioning church, in fact, maintained the office hours it claimed, there was no need to schedule an appointment for the compliance review. The USCIS officer visited the church during claimed office hours. Again, the petitioning church fails to recognize that it bears the burden of proof. The plaintiff did not overcome the failed compliance review resulting from the findings during the site visits.

This Court finds that the AAO's finding that plaintiff failed the compliance review was supported by the evidence. Further, the AAO's decision to revoke the petition based on this finding and the evidence was not arbitrary, capricious, or an abuse of discretion.

*Compensation*

The second ground for revocation concerns Omotayo's compensation and related credibility issues that impact the I-360 petition. In support of its petition, plaintiff stated it would pay Omotayo a salary of $28,000 per year plus benefits including full medical coverage for his entire family, full accommodation at church expense, the use of a vehicle operated and maintained at the expense of the church, payment of his telephone bills, and tuition and daycare assistance for any minor children. Following the notice of intent to revoke, plaintiff was instructed to provide proof showing Omotayo's income. The materials submitted included discrepancies regarding Omotayo's salary, benefits, and residence.

Plaintiff takes the position that it did not have to meet the original terms of compensation for a variety of reasons. First, it argues that the letter setting forth the original compensation terms stated that Omotayo's "remuneration will . . . be reviewed annually" and, therefore, this phrase allows it to alter the terms of the compensation. Second, it argues that plaintiff did not have a need for the benefits originally promised because Omotayo's spouse began working as a pharmacist in 2005 and her job provides medical coverage and other benefits for the family. Finally, plaintiff argues that it has met the I-360 requirements because Omotayo's income has never dropped below the poverty line.

Plaintiff's response to the issues that led to the revocation is nothing more than avoidance, misdirection, and excuses as to why it should not have to comply with the terms of the beneficiary's compensation that it submitted in support of its I-360 petition. The evidence did not establish that plaintiff *ever* abided by the originally claimed terms of compensation. Further, the evidence raises significant questions and discrepancies regard the full-time employment of Omotayo. Again, plaintiff fails to acknowledge that it bore the burden of proof as to the special immigrant religious worker status throughout the proceedings.

This Court agrees with the AAO that the inconsistencies in the evidence as to Omotayo's compensation and the credibility issues as to whether Omotayo is employed full-time justify the finding that plaintiff failed to meet the requirements of the I-360 petition. This Court finds that the decision to revoke was not arbitrary, capricious, or an abuse of discretion, and was in accordance with the law.

V. **Conclusion**

Because the revocation of the special immigrant religious worker status was not arbitrary or capricious, and was in accordance with the law, the defendant's motion is granted and plaintiff's motion is denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment (ECF #10) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (ECF #16) is **DENIED**.

**IT IS FINALLY ORDERED** that the AAO's decision revoking plaintiff's I-360 petition is **AFFIRMED**.

A separate judgment shall accompany this Memorandum and Order.

Dated this 12th day of March, 2015.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE